Jack L. FIRSDON and Ruth A. Firsdon, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 95–3097.

United States Court of Appeals, Sixth Circuit.

Argued May 14, 1996.

Decided Sept. 12, 1996.

Samuel B. Morrison (argued and briefed), Toledo, OH, for Plaintiffs–Appellants.

Gary R. Allen, Acting Chief (briefed), Kenneth W. Rosenberg, Patricia Bowman (argued), U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, for Defendant–Appellee.

Before: NELSON and MOORE, Circuit Judges; CLELAND, District Judge.*

MOORE, Circuit Judge.

In this tax refund case, plaintiffs lay claim to net operating loss deductions purportedly left over from their liquidated bankruptcy estate. The district court granted summary judgment for the United States on two grounds: (1) the refund claims for tax years 1986 and 1987 were time barred; (2) no net operating losses remained for the plaintiffs after such losses were reduced by the amount of debt discharged in the estate's bankruptcy proceeding. We agree with the district court, and we affirm.

## I. BACKGROUND

Plaintiffs Jack and Ruth Firsdon were employed as a firefighter and secretary, respectively. In addition, they ran their own farm, which generated significant losses from 1981 to 1984. In 1982, the Firsdons filed for reorganization under Chapter 11 of the Bankruptcy Code. In 1985, the case was converted into a Chapter 7 liquidation. The appointed bankruptcy trustee filed the estate's income tax returns for the tax years 1982–86 and 1988–89, while the Firsdons filed their own personal returns. The estate's 1989 return showed a final net operating loss (NOL) carryforward of $345,424.00, reflecting the losses incurred from 1981 to 1984.[1]

---

\* The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Under I.R.C. § 172, a taxpayer is permitted to take a deduction on NOLs properly carried back or forward to the tax year in question. In general, NOLs may be carried back to the three preceding taxable years or carried forward to the fifteen following taxable years. *See* 26 U.S.C. § 172.

■ Shortly after termination of the bankruptcy in 1991, the Firsdons filed amended individual returns for tax years 1986–89, claiming deductions based on the estate's allegedly leftover NOLs. Under section 1398 of the Internal Revenue Code (I.R.C.), the Firsdons succeeded to any unused NOLs of the estate. *See* 26 U.S.C. § 1398(g) & (i). The Internal Revenue Service (I.R.S.) denied the claims, however, stating that they had not been timely filed. The Firsdons then brought a refund action in the district court, and the government responded with two arguments: first, that jurisdiction was lacking over the 1986 and 1987 claims because of the plaintiffs' failure to file within the limitations period set forth in I.R.C. § 6511(a), and second, that the NOLs had not been reduced by the debt discharged in bankruptcy, as required by I.R.C. § 108 (for the 1988 and 1989 claims). There being no genuine issue of material fact, both parties moved for summary judgment. The district court agreed with the government and granted its cross-motion. The Firsdons timely appealed. We review the district court's grant of summary judgment de novo. *Shahid v. Ford Motor Co.,* 76 F.3d 1404, 1408 (6th Cir.1996).

## II. THE 1986 AND 1987 CLAIMS

■ The district court correctly observed that a refund claim filed with the I.R.S. is a jurisdictional prerequisite to a refund action in the federal district court. *See Firsdon v. United States,* No. 3:93–CV–7726, 1994 WL 773397, at *1 (N.D.Ohio Dec.20, 1994); 26 U.S.C. § 7422(a). Furthermore, a claim filed with the I.R.S. must be brought "within 3 years from the time the return was filed or 2 years from the time the tax was paid," whichever comes later. 26 U.S.C. § 6511(a).[2] In this case, the Firsdons do not dispute that their 1986 and 1987 refund claims failed to meet the strict requirements of I.R.C. § 6511(a). Therefore, unless the time period could somehow have been tolled, the district

court did not have subject matter jurisdiction over these claims, and they were properly dismissed.

■ The Firsdons argue that the statutory period was in fact tolled during the pendency of their bankruptcy proceeding, under section 346(i)(2) of the Bankruptcy Code, 11 U.S.C. § 346(i)(2). Section 346(i)(2), like I.R.C. § 1398(i), provides that at the close of a bankruptcy proceeding, debtors shall succeed to any unused tax attributes (including NOLs) to which the estate originally succeeded at the inception of the proceeding. Unlike I.R.C. § 1398(i), though, 11 U.S.C. § 346(i)(2) goes on to state: "The debtor may utilize such tax attributes as though any applicable time limitations on such utilization by the debtor were suspended during the time during which the case was pending." On its face, this language appears to support the Firsdons' contention that I.R.C. § 6511(a) should have been tolled. The sweep of this sentence is significantly circumscribed, however, by § 346(a), which states:

> Except to the extent otherwise provided in this section, subsections (b), (c), (d), (e), (g), (h), (i), and (j) of this section apply notwithstanding any State or local law imposing a tax, but subject to the Internal Revenue Code of 1986.

11 U.S.C. § 346(a). In this context, "subject to the Internal Revenue Code" essentially means that the named Bankruptcy Code subsections, including the tolling provision in subsection (i), have no effect on the federal tax laws. Such is the holding in *In re Page,* 163 B.R. 196, 197–98 (Bankr.D.Kan.1994), where the court found § 346(a) "not extremely well-drafted" but clear enough to make subsection (i) applicable "only to state and local laws."

Although *Page* is the only case even remotely on point, it finds full support in the legislative history to which it cites. Appar-

---

**2.** Although the district court cited the carryback provision (§ 6511(d)(2)) instead of the general provision covering carryforwards (§ 6511(a)), the ultimate effect was the same. The longest statutory period the Firsdons could have hoped for under either provision was three years from the filing dates of the returns. *See* 26 U.S.C. § 6511(d)(2).

Contrary to the view advanced by the Firsdons' attorney at oral argument, the attempted transfer of NOLs in this case is properly deemed a carryforward, because the losses were incurred from 1981 to 1984, and the tax years to which the Firsdons wished to carry them were 1986 to 1989.

ently, the special tax provisions of the Bankruptcy Reform Act of 1978, including § 346, were originally intended to apply to all types of taxes—local, state, and federal. But during the progress of the bill, it was determined that "a potential jurisdictional conflict" existed between the House Judiciary Committee, to which the bill had been referred, and the Ways and Means Committee, which had jurisdiction over federal tax legislation. A compromise was thus reached whereby the tax provisions were made "inapplicable to Federal taxes," in the hope that comparable federal provisions would be enacted during the subsequent (96th) Congress. H.R.Rep. No. 595, 95th Cong., 1st Sess. 1, 3, 275 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 5965, 6232; *see also* 1A Lawrence P. King, *Collier on Bankruptcy* ¶ 8.03 (15th ed. 1995). Hence, Congress inserted § 346(a). Comparable federal tax provisions were eventually enacted in the Bankruptcy Tax Act of 1980, including I.R.C. § 1398(i), the provision under which the Firsdons are here able to succeed to their estate's unused tax attributes. Notably, however, although I.R.C. § 1398(i) follows 11 U.S.C. § 346(i)(2) in providing for the succession of a bankruptcy estate's tax attributes for *federal* tax purposes, it does not contain any of the tolling language found in the second sentence of § 346(i)(2).

■ As a consequence, § 346(i)(2) remains inapplicable to the federal tax laws, even though it was originally drafted with those laws in mind. Because Congress specifically

amended § 346 in order to make it "subject to" the Internal Revenue Code, plaintiffs cannot rely on § 346(i) to override the statute of limitations found in I.R.C. § 6511(a).[3] We affirm the district court's summary judgment against the Firsdons on their 1986 and 1987 refund claims.[4]

### III. THE 1988 AND 1989 CLAIMS

■ The Firsdons received a significant tax benefit when their estate filed for bankruptcy and their debts were discharged. Normally, the cancellation of indebtedness counts as gross income to the debtor, on which he or she is fully taxable. I.R.C. § 61(a)(12). In bankruptcy cases, however, such cancellations are excepted. I.R.C. § 108(a)(1)(A). Therefore, in the instant case, the Firsdons' estate was not taxed on the hundreds of thousands of dollars of debt that were discharged in its bankruptcy proceeding. *See Firsdon*, 1994 WL 773397, at *1; Def.'s Cross–Mot. for Summ. J. at 4 n. 2., J.A. at 28.

Section 108(b) of the I.R.C. provides that any amount excluded from gross income under § 108(a) "shall be applied to reduce the tax attributes of the taxpayer," including NOLs. The obvious reason for this provision is to prevent bankrupt debtors from procuring a double benefit from the tax laws—a tax-free cancellation of debt plus favorable tax attributes from the bankrupt estate. For some reason, it does not appear that the bankruptcy trustee in the Firsdons' case re-

3. In their reply brief, the Firsdons also press the claim that § 346(i) actually contains an exception to § 346(a). That is, even though § 346(a) identifies § 346(i) as being inapplicable to federal taxes, § 346(a) contains the limiting language, "[e]xcept to the extent otherwise provided in this section," and according to the plaintiffs, § 346(i) does so "otherwise provide." Even if we ignore the fundamental circularity of such a reading—in which one statutory subsection limits the applicability of another subsection, but the latter subsection contains a limitation on that limitation which renders the first subsection inapplicable—we simply discern no basis for interpreting § 346(i) to "otherwise provide." Nothing can be found in § 346(i) to indicate that, notwithstanding the explicit limitation in subsection (a), subsection (i) should in fact apply to the provisions of the federal tax code.

4. Plaintiffs are not unreasonable in questioning the utility of keeping the limitations period running while leftover NOLs remain inaccessible to them in the ongoing bankruptcy proceeding. Nevertheless, Congress's intent here is clear, and there is simply no way for plaintiffs to get around it. As the government emphasizes, the United States may only be sued upon its own consent—the statute of limitations " 'constitutes a condition on the waiver of sovereign immunity,' and, as such, 'define[s] the extent of the court's jurisdiction' over ... an action." Appellee's Br. at 11–12 (citing *United States v. Mottaz*, 476 U.S. 834, 841, 106 S.Ct. 2224, 2229, 90 L.Ed.2d 841 (1986)). Without amending § 346 to make it affect I.R.C. § 6511(a), Congress cannot be said to have extended its waiver of immunity in any fashion. At any rate, there is no unfairness here because, as will be explained below, there are no leftover NOLs for the Firsdons to utilize.

duced the NOLs of the estate by the amount of debt discharged. The estate's 1989 tax return shows an NOL carryover of $345,424.00. J.A. at 78. Given that the plaintiffs' estate had $55,264.16 in priority claims, $1,323,835.94 in secured claims, and $342,579.89 in unsecured claims, but merely $25,029.59 in net receipts and $503,081.00 in property, see *Firsdon*, 1994 WL 773397, at *1; Def's Cross–Mot. for Summ. J. at 4 n. 2; J.A. at 66, the only way in which the estate could have retained a properly reduced carryforward of $345,424.00 in 1989 would have been if its NOLs had totaled $1,538,993.30 before reduction.[5] But the Firsdons failed to produce any evidence that such enormous and improbable losses were incurred by the estate from 1981 to 1984. The Firsdons failed to show that the bankruptcy trustee reduced the NOLs by *any* amount of canceled debt. Indeed, the far more plausible inference is that the $345,424.00 figure equaled the entire amount of loss, and that if the proper reductions had been made, nothing would have remained for the plaintiffs to carry forward.[6]

▮ The Firsdons try to counter these facts in a number of unpersuasive ways. First, they suggest that the bankruptcy trustee may actually have "properly reduced" the NOLs, and that we must simply assume "the trustee did his job correctly" and "the Bankruptcy Court judge did his job properly." Appellants' Reply Br. at 12. There is no support for such a notion. All of the evidence before the district court suggested that no reduction was made, and to the extent that a contrary conclusion might have

been reached, it was the plaintiffs' burden to present evidence rebutting the facts and arguments in the government's motion for summary judgment. In a refund action, the plaintiff bears the ultimate burden of persuasion. See *McDermitt v. United States*, 954 F.2d 1245, 1251 (6th Cir.1992). Here, that burden was clearly not met.

▮ Second, the Firsdons argue that the government "is collaterally estopped" from challenging the amount of NOLs, because the appellee "approved the return filings, including the net [sic] NOL" in the bankruptcy proceeding. Appellants' Br. at 15–16. This argument also lacks merit. At the very least, collateral estoppel (or "issue preclusion") requires that an issue be "actually litigated" and "necessary to the judgment" in order to apply. *Kane v. Magna Mixer Co.*, 71 F.3d 555, 561 (6th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 1848, 134 L.Ed.2d 949 (1996). In this case, there is no evidence that the amount of NOLs on the estate's final tax return was a litigated issue. Likewise, there is no evidence that the NOL figure was necessary to the bankruptcy court's judgment. Indeed, it is apparent that the government was completely without incentive to litigate or otherwise dispute the amount, even if it was incorrect, because it would have changed nothing in the estate's tax liabilities—the final amount would still have been zero. This lack of incentive provides even further reason for denying the application of collateral estoppel. See *United States v. Berman*, 884 F.2d 916, 922–23 (6th Cir.1989).

---

**5.** Plaintiffs now appear to dispute this amount, saying that there are genuine issues of fact as to how much debt was actually discharged. They cannot do this. At summary judgment, they accepted all of the government's calculations as being "essentially correct." Pls.' Opp'n to Def.'s Cross–Mot. for Summ. J. at 1. Moreover, plaintiffs fail to provide even the hint of an explanation here as to why these numbers might be inaccurate, stating only that the district court's decision "may be in error." Appellants' Br. at 17.

**6.** In fact, extra-record evidence submitted by the Firsdons only serves to confirm this inference. The estate's earlier tax returns show amounts of yearly net loss on Form 1040, Schedule F, J.A. at 124, 132, 140, 157, but then they show these

identical amounts appearing on the trustee's worksheet calculations of NOL carryovers, J.A. at 135, 142, 150, 162, 163, 168. In other words, the bankruptcy trustee did not reduce the NOLs by the amount of debt discharged—or by any amount—because the reported losses and NOL carryforwards remained exactly the same from year to year. The $345,424.00 figure on the 1989 return reflects the sum of these same, unreduced amounts.

This evidence was not before the district court, but it is not necessary to our judgment, either. After the government raised the argument in its summary judgment motion that the bankruptcy trustee had neglected to reduce the NOLs, this point remained unrebutted in the district court.

Third, plaintiffs assert that because the I.R.S. "accepted" the estate's tax returns "as filed," it admitted all amounts contained therein as true and accurate. This is equally unpersuasive. The government points out that the I.R.S. explicitly notified the trustee, in the very next sentence after accepting the returns: "Do not consider this as an examination that resulted in no change to your tax liabilities. You were not examined for these years." I.R.S. Letter to Bankruptcy Trustee, June 3, 1991. In other words, there was no examination of and no admission as to the contents of any of these returns. Besides, even without this notice, it is highly doubtful that the mere acceptance of returns would have constituted an admission: as mentioned above, the government did not have any reason to concern itself over the numbers in the returns—in the end, they all added up to something translating into zero tax revenue.[7]

It does not matter that I.R.C. § 108 only requires the estate, rather than the succeeding individual taxpayer, to reduce NOLs by the amount of canceled debt. The Firsdons are not entitled to benefit from an erroneous calculation by their predecessor estate. The district court's summary judgment against them on their 1988 and 1989 refund claims was entirely correct.

## IV. CONCLUSION

We note that the second rationale in this case—the reduction of NOLs by the amount of canceled debt—provides a basis for affirming the district court's judgment as to the 1986 and 1987 claims, as well as the 1988 and 1989 claims. Nonetheless, because the Firsdons did not satisfy a jurisdictional prerequisite for having the earlier claims heard in federal court, we adopt both of the district court's bases: the statute of limitations in I.R.C. § 6511(a) and the reduction of tax attributes under I.R.C. § 108(b). We **AFFIRM**.

---

7. At oral argument, counsel for the Firsdons attempted to buttress this contention by pointing to 11 U.S.C. § 505(b). *See also* Appellants' Br. at 16–17 (referring to § 505(b)). Section 505(b) is of no assistance to the plaintiffs. It provides for a prompt audit procedure on a bankruptcy trustee's tax returns, and it addresses the finality of the amount of an estate's tax liability. However, the provision has nothing to do with the finality of a trustee's NOL calculation, where that calculation itself has no ultimate effect on the amount of the estate's liability. Where, as here, the estate's liability is zero under any NOL figure, the I.R.S. cannot in any sense be bound by the trustee's erroneous NOL figure under § 505(b).