472

Martin Lippman, of New York City (McLaughlin & Stern and Stephen S. Bernstein, all of New York City, on the brief), for appellant.

Emanuel D. Finkelman, of Brooklyn, N. Y. (Benjamin Harwood, Jr., and H. Paul Shanik, both of Brooklyn, N. Y., on the brief), for appellees.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This appeal raises the issue of the power of a bankruptcy court to reopen a reorganization decree some time after the final period set in it to permit of the exchange of securities in accordance with the provisions of the reorganization plan. This is the necessary relief which the appellees here sought below by a motion in the proceedings asking for "an order nunc pro tunc" extending their time to exchange their securities for those of the new corporation organized under the plan and for "such other and further relief" as to the court "may be just and proper in the premises." Holding that the equities in their favor justified "the exercise of discretion for them," the District Court granted an order providing in detail for the exchange of the securities within ten days from its date and directing the new corporation to accept the securities and to cause its indenture trustee to issue the required new securities to them, together with back interest and dividends from the date of the confirmation of the plan or, in the alternative, to pay them the face value of their securities with interest. The corporation has appealed from this order.

Appellee Duebler is the owner of two $1,000 Sherry Netherland First Mortgage 5¾% Sinking Fund Gold Bond Certificates issued by the debtor, 59th Street & Fifth Avenue Corporation, in 1928. Her sister, appellee Steinkamp, is the owner of five similar bonds. These were purchased by each appellee in 1928 at 97½¢ on the dollar. Since interest was paid only until and including that for November, 1931, the bonds have attached all the interest coupons beginning with those for May, 1932. The sisters show that they are in modest circumstances, unacquainted with financial and investment affairs, and that their then life savings went into the bonds. Being advised by the employer of one of them to hold onto the bonds during the depression then affecting the hotel business, they took no action with respect to the bonds until the middle of the year 1945, when, upon inquiry of an official of

a savings bank, they were advised to hold the bonds longer, as the real estate market appeared to be rising. In May, 1946, they took steps to realize on the bonds through another bank, but were informed by the bank on May 27, 1946, that the corporation had been reorganized in 1936 and that bonds not exchanged by July 26, 1944, were of no value. They then proceeded with appropriate diligence to bring on the present motion in July, 1946. At no time prior to May, 1946, did they have any actual notice or knowledge of the reorganization proceedings.

An involuntary petition against the debtor under Bankruptcy Act, § 77B, 11 U.S.C.A. § 207, had been filed in the District Court on January 31, 1935; and it was adjudged insolvent on June 14, 1935. A plan of reorganization was confirmed by order entered by Judge Patterson on October 25, 1935. The plan called for the organization of a new corporation and for the exchange of its securities for those of the old debtor, including the issue of $6,000,000 in principal face amount of the gold bond certificates of the type held by appellees. The decree contained provisions reserving jurisdiction to the court for the consummation of the plan and for the entry of "a final decree discharging the Debtor and closing the case." On July 26, 1939, Judge Patterson signed an order discharging the debtor, restraining all creditors from further proceedings against its assets, requiring, among others, all holders of the gold bond certificates to surrender their securities for exchange under the Plan of Reorganization "not later than five years from the date of this order," and concluding with a statement that the proceedings "are hereby terminated" and the debtor's estate "is hereby closed." The provision granting five years for the exchanges is followed by this statement of bar: "At the expiration of such five year period, the holders of such securities shall not be entitled to receive any securities or other participation under the Plan of Reorganization, and the securities remaining unclaimed at the expiration of such period shall become the property of The Sherneth Corporation free and clear of any and all claims and interests."

In both the order of confirmation of 1935 and the final order of 1939, Judge Patterson found that notice of hearing had been given as ordered by the court; and the affidavit of appellant shows that this was by publication in daily newspapers. It also showed further facts of attempted notice to the security holders,[1] of wide quotation in newspapers of prices of its securities, and consequent dissemination of information about its investment situation, of destruction of unexchanged securities on December 27, 1944, amounting to $130,000, of extensive trading after the bar date in its new securities by persons oblivious of any contingent claims[2]—all in support of its contention that present security holders were entitled to the protection of the bar order.

Notwithstanding the appealing personal situation of appellees, we are constrained to hold that the District Court did not have power to issue the order. Both § 77B and the later Chapter X gave authority to the court to issue its final order closing the estate and ending liability of the debtor except as set forth in the confirmed plan, § 77B, sub. h, 11 U.S.C.A. § 207, sub. h, § 228, 11 U.S.C.A. § 628. It is admitted that such an order would be effective against appellees, whether or not they had actual notice of its entry. Mohonk Realty Corporation v. Wise Shoe Stores, 2 Cir., 111 F. 2d 287, 290, certiorari denied 311 U.S. 654, 61 S.Ct. 47, 85 L.Ed. 418. The former statute is not so explicit as to the inclusion of a bar order as is Chapter X; but the power of the court, even under the earlier proceeding, appears well settled.

[1] By letter of May 25, 1944, to each holder of old or new securities, so far as known. A notice was also carried by Moody's Investors Service in its publication, "Moody's Banks and Finance," July 12, 1944.

[2] Both bonds and stock were given for the old gold certificates; the figures showed that the totals of the bond tradings since the bar order slightly exceeded the face amount of the new bond issue, while the total shares of stock transferred somewhat exceeded two-thirds of the total outstanding.

Knapp v. Detroit Leland Hotel Co., 6 Cir., 153 F.2d 715, 717; cf. also In re Plankinton Bldg. Co., 7 Cir., 135 F.2d 273. But § 204, 11 U.S.C.A. § 604, now provides explicity that the judge may fix a time, "to expire not sooner than five years after the final decree closing the estate, within which, as provided in the plan or final decree * * * the holders of securities shall present or surrender their securities. After such time no such claim or stock shall participate in the distribution." Since this statute was in effect when the 1939 order was entered, the judge might apply it where, as here, it was practicable, § 276, sub. c(2), 11 U.S.C.A. § 676, sub. c(2); and his close following of its wording shows that he so intended.

With such explicit statutory mandate it would seem clear that no discretionary power to disregard the bar provision or to set aside the final order remained in the court. This was the direct holding of the Third Circuit in the well-considered case of In re Peyton Realty Co., 3 Cir., 148 F. 2d 771, which was cited and followed in Knapp v. Detroit Leland Hotel Co., supra; and see also In re Sherland Bldg. Corporation, D.C.N.D.Ind., 29 F.Supp. 985; In re Tom Moore Distillery Co., D.C.W.D. Ky., 52 F.Supp. 938. Even in the absence of a closing order, we have refused a late application for an extension of time for the exchange of securities. North American Car Corporation v. Peerless Weighing & Vending Mach. Corporation, 2 Cir., 143 F.2d 938, a case which illustrates not only the settled judicial reluctance to reopen estates once closed for further claims,[3] but also the court's lack of continued jurisdiction over a reorganized corporation.[4] And Federal Rules of Civil Procedure, rule 60(b), 28 U.S.C.A. following section 723c, is not applicable, both because its six months' time limit has been exceeded and

because the conditions for its operation are not here presented. In re Lowerree, 2 Cir., 157 F.2d 831; Wallace v. United States, 2 Cir., 142 F.2d 240, 244, certiorari denied 323 U.S. 712, 65 S.Ct. 37, 89 L.Ed. 573; 3 Moore's Federal Practice 3255–3276; Moore and Rogers, Federal Relief from Civil Judgments, 55 Yale L.J. 623.

We have found no other case where the power here asserted has been upheld. In the case of In re Plankinton Bldg. Co., supra, particular stress is put upon the fact that there no bar provision had been stated. The general provision for the re-opening of bankrupt estates, § 2, sub. a(8), 11 U.S.C.A. § 11, sub. a(8), is not relevant, since reopening is not granted where the court has no power to grant the ultimate relief sought. Milando v. Perrone, 2 Cir., 157 F.2d 1002. Sec. 119, 11 U.S.C.A. § 519, granting power to the reorganization court for cause shown to extend the time which it is required or permitted to fix in the first instance, we think refers only to time periods before the ultimate closing of the estate. This seems to be made clear by § 205, 11 U.S.C.A. § 605, which provides that the securities remaining unclaimed at the expiration of the time fixed under § 204, "or of any extension thereof, shall become the property of the debtor or of the new corporation acquiring the assets of the debtor under the plan, as the case may be, free and clear of any and all claims and interests." Hence time may be extended before the bar has fallen, and not afterwards.

Secs. 204 and 205 thus provide a statutory scheme to afford a definite and final limit upon the exchange of securities under plans of reorganization. The allotment of time specified and allowed is not ungenerous. Here, indeed, it was nearly ten years from the start of proceedings; the appellees had taken no action for more than fourteen years. In view of the time neces-

---

[3] See also Kelby v. Prudence-Bonds Corporation, 2 Cir., 140 F.2d 185; In re Thornycroft, Inc., 2 Cir., 120 F.2d 469, 471; In re Diana Shoe Corporation, 2 Cir., 80 F.2d 92, 94; Standard Steel Works v. American Pipe & Steel Corporation, 9 Cir., 111 F.2d 1000; Piedmont Ice & Coal Co. v. American Service Co., 4 Cir.,

130 F.2d 78; cf. In re United Cigar Stores Co. of America, 2 Cir., 82 F.2d 744, 745.

[4] See also Reese v. Beacon Hotel Corp., 2 Cir., 149 F.2d 610; Towers Hotel Corp. v. Lafayette Nat. Bank of Brooklyn in N. Y., 2 Cir., 148 F.2d 145, and cases cited.

sarily consumed in devising and executing a revitalization of a defunct corporation, the period of limitation will certainly never be short. At any rate we have no authority to destroy the statutory scheme thus carefully planned. Anderson v. Yungkau, 67 S.Ct. 428, 430, 431.

Reversed for denial of the motion.